**STATE ex McCUE (and 7 Others) v JASTER et**
**(8 cases)**

Ohio Appeals, 2nd Dist, Franklin Co

Nos 2763, 2764, 2765, 2766, 2767, 2774, 2775 & 2776

Decided Sept 26, 1938

Van Tilberg & Murphy, Steubenville, for relator.

Herbert S. Duffy, Attorney General, Columbus, Harold Rutledge, Asst. Atty. General, Columbus, for respondents.

## OPINION

By HORNBECK, J.

We consider the eight cases in one opinion as the major questions are the same in all.

On and prior to March 25, 1935 all of the relators held positions in the classified service of the State of Ohio and were employed in Jefferson County in the Highway Department. Relators Ralph McCue, Leroy Rine and Floyd Scott were classified as laborers in charge; Mahlon Newburn and Ellis Scott as mechanics; Lucian Lazear and William Swickard as tractor operators; Ernest Scott as shovel operator.

A few days prior to March 25, 1935 all of the employees in the Highway Department in Jefferson County were laid off. Soon thereafter most of them were put back on the job but the eight relators herein and others were not, and were orally informed by their immediate superior, Harry Sharp, who was then maintenance superintendent of the Highway Department in Jefferson County, that they were temporarily laid off.

The relators claim, and it is not denied, that they had no written notice of the purpose to relieve them or the reason therefor and in the alternative say that if the action taken was either a discharge or but a temporary lay-off it was a void order. The defense is that the lay-off was temporary and made solely for the purpose of economy and to meet the necessity of a decreased payroll.

There is also a specific defense of laches asserted against all the relators, in that they failed to institute their causes of action within a reasonable time after they accrued.

These defenses are met by the claim of the relators that there was no decrease in appropriation for payroll; that the steps taken were not for the purpose of economy and that the pretended temporary lay-off was but a subterfuge to accomplish the permanent discharge of relators. The claim of laches is denied.

The defense of laches is not established because of the statement of Mr. Sharp at the time of the lay-off of the ██ men that it was but temporary and due to a shortage in funds and that they would be put back to work as soon as sufficient money was available and the persistent restatement of these facts, the correspondence which was carried on between counsel for relators and the highway officials, the action in prohibition which was later instituted in Common Pleas Court in Jefferson County and upon other facts in the record.

We first make certain general observations and then consider the claims of the relators under their respective Civil Service classifications.

Issue is sharply drawn both on the pleadings by the testimony and in the briefs as to the claim of respondents that there was any reduction in the amount of money available for payroll employees in the Highway Department of Jefferson County at the time that the relators were laid off. Upon the state of the record we are required to find that there was a reduction in available funds because of the order from the Director of Highways through the proper officials and to Mr. Sharp, maintenance superintendent. This proof is not very satisfactory in that it does not disclose the exact situation at the source from which the funds were to come, nor any order, nor any figures set up by any fiscal authority which indicates the necessity for retrenchment. On the other hand, the relators upon whom the burden rests have not shown that funds were available to meet the complete payroll at the time of the lay-off.

But we do not understand that if there are sufficient funds to meet a full payroll it is the obligation of a department to retain every one then working ██ if in the interests of economy there can be a reduction of the force, subject always to the requirements that the lay-off shall be made in good faith, that no employee then working not in the same classification as the employee laid off shall be employed in his stead and that no man not in the classified service shall be detailed to do the specific work which the employee was performing at the time of the lay-off.

The payroll on March 25, 1935, at the time relators were laid off, was approximately $2600.00 every two weeks. Thereafter, for general maintenance it was reduced materially. Later it was markedly increased but according to the testimony because of

emergencies incident to floods, ice and snow. No good reason appears why some of the relators could not have been used on these occasions but this does not directly bear upon the question before us, namely, whether or not the order by which the relators were laid off was void.

At the time of the lay-off there were eighty-eight men on the payroll, the amount of which was $2558.65 by-monthly and for several months prior thereto the number employed was about the same. The first payroll succeeding the lay-off that of April 10, 1935, showed sixty-seven employees, the amount thereof, $1739.20. The payroll of April 25, 1935 totalled sixty-six employees, the amount, $1877.55. The payroll of May 10, 1935, number of employees, sixty-five, amount of payroll, $1899.83. The payroll of May 25, 1935, number of employees, sixty-two, amount of payroll, $1852.30, all succeeding payrolls were less independent of emergency expenditures.

The testimony of Fred L. Biechle, who is division engineer of the division in which Jefferson County was located, was that he was instructed to lay off enough men to cut the budget to a certain figure, which was approximately $800.00 reduction every two weeks and to keep as many men as possible at work at that amount of money. Pursuant to that order he and Mr. Sharp, maintenance superintendent, made the reduction and "eliminated a lot of jobs that was not needed." (Emphasis ours). They both say that it was expected to put the laid off men back on the job when and if enough money was available. This statement of purpose cannot be accepted as entirely correct in view of the situation as developed in the testimony to which we shall hereafter advert. The statement of Mr. Sharp that they eliminated a lot of jobs more nearly represents the effect of the order.

Mr. Sharp said that under the terms of the lay-off they had enough money to keep sixty men on the payroll besides the superintendent and clerk by laying off higher bracket men. He then detailed the employees to be kept as follows: Three nightwatchmen, two greasers, one mechanic, four on guardrail crew, fourteen from the garage under his direct supervision, three laborers in charge and two lantern carriers. This number of detailed employees does not total sixty but thirty-one. It may be that the witness meant to say that he had fourteen men under each of the three laborers in charge but such conclusion is not justified by the record, nor is there anything definite as to the number of men, then or later, in charge of each foreman or laborer in charge.

It is testified by witnesses for the respondents that after the lay-off no men on the payroll did the work which the relators theretofore performed. The relators failed to disprove this statement.

Upon the whole, without discussing the testimony more at length, which is somewhat difficult of interpretation because of the fact that what could have been set forth in concrete form in exhibits must be gleaned from the oral testimony of the witnesses, we cannot say that the relators have met the burden of proof which is upon them in a mandamus action in any of the particulars set up in their petitions. They have, in our opinion, shown that at the time of the lay-off it was not probable that certain of the relators would be within any reasonable time returned to their employment and the action of the superintendent in releasing them was practically an abolishment of their jobs. That the purpose of the lay-off was economy and to meet a deficiency in available funds fairly appears. There is no such discrimination proven against any of the relators as would require their reinstatement.

There is some testimony by Mr. Biechle that certain of the relators were inefficient but this was not the basis of their release and it is commonly agreed that the general purpose was as heretofore indicated. When from a number of employees of like classifications it is necessary to make a reduction those who are to be laid off are to be determined within the wide discretion of the head of the department. We can not say that this discretion was abused, though some of the men, i.e., laborers in charge, laid off, were senior in tenure of service to those retained.

We have recently held in the case of **State ex Robinson v Margaret A. Allman,** director Department of Public Welfare of the State of Ohio, Franklin County, May 17, 1938, unreported, that where a Civil Service employee is suspended for disciplinary purposes he is entitled to specific notice, under §486-17, GC of the reason for the suspension. In **Curtis, Safety Director, et v State ex Morgan, 108 Oh St 292,** it was held that no written notice is required to be given an employee in the classified service when he is temporarily laid off in the interest of economy and for the sole reason of the lack of sufficient funds with

which to pay salaries of the entire working force in such department and later, in **Vansuch, Director of Public Safety and Service et v State ex Fetch, 112 Oh St 688**, it was said in a per curiam opinion that where, by reason of an emergency ordinance of a city it was necessary to reduce the force of men working under the same classification from sixteen to twelve, there was no violation of Civil Service requirements by the reduction made necessary by the ordinance. The court in part based its conclusion upon the fact that the removal did not involve any question of misconduct or disqualification of the appointees to discharge the duties of their positions.

Judge Marshall, in the opinion in the Curtis case, supra, says that:

"It is apparent from this language (a part of §486-17, GC) that there is no occasion for furnishing a copy of the order to employee, or for such employee to file an explanation, unless there is something about the transaction which calls for an explanation upon the part of such employee; that is to say, unjust charges of inefficiency, misconduct, dereliction of duty, or other delinquency."

So in this case the broad basic reason, insofar as can be determined from this record, for the release of relators was to effect an economy and to meet the necessity of a reduced fund with which to meet the payroll. Incidentally, because of the absence of certain equipment the effect may have been for the time to abolish certain positions of employees to operate this equipment, viz., tractors and shovels, though shovels were brought into the county if needed.

The record will not support the claim of relators that the action of the director of highways was a discharge of employees for any claimed violation of the Civil Service laws.

### LABORERS IN CHARGE

Relators McCue, Rine and Floyd Scott, were classified as laborers in charge. At the time of the lay-off there were seven such employees in this classification. Four of them were released on March 25, 1935, among whom were the above named relators and but three retained. The relators released were senior in point of service to those retained. There is practically no evidence in the record showing that after the lay-off any men other than the three

retained as laborers in charge were doing any of the service required under this classification. One witness says that on one occasion a truck driver gave an order respecting the disposition of some tools which order theretofore was given by a laborer in charge. This is about the extent of specific testimony on this subject. Of course, it might be urged that if seven laborers in charge were required to operate a force of eighty-eight men, the number before the lay-off, three would be insufficient for 60 men after the lay-off. We cannot draw this inference for the reason that there may have been too many laborers in charge on the job prior to the lay-off. We can take no exception to the reasons assigned for retaining the three laborers in charge who were kept, namely, that they were in the north, central and southern parts of the county and therefore well located to meet the demands of the highway work.

### MECHANICS.

Three of the employees were classified as mechanics, Ellis Scott and Mahlon Newburn, relators at 57¼c per hour and Ruth at 70c per hour. Ruth was retained, the other two laid off and later Ruth quit and no one succeeded him. Under the testimony it appears that in the fall of 1934 an arrangement had been made whereby both Chevrolet and Ford provided new motors in their entirety when needed, thus avoiding the necessity of overhauling the motors. There was no work which required the retention of more than one mechanic but at page 137 of the record C. J. Lansley who testified from the Civil Service records, said that James W. Ruth, mechanic, was a provisional appointee from Guernsey County, Division No. 11, on June 25, 1925, and was certified January 25, 1926. That is to say that he was appointed permanently in Guernsey County. To the question: "Was he ever appointed as mechanic in Jefferson County, Ohio?" He answered: "Not according to this record."

On page 145 these questions were put and answers made:

"Q. In this particular case it appears that James Ruth was certified by the Civil Service Commission to Guernsey County, but that he worked in Jefferson County; and it also appears that Mahlon Newburn and John Scott, who were working alongside him in 1936 and had been certified to Jefferson County, Ohio, by the Civil Service Commission, were laid off; now on that state of facts, under the rules of the com-

mission, where they were retaining one mechanic, shouldn't they have retained either Mr. Newburn or Mr. Scott?

A. Yes. providing Mr. Ruth had not been transferred from Guernsey County to Jefferson County.

Q. If he had been transferred, that fact would appear in your records, wouldn't it?

A. Yes, sir.

Q. It does not appear?

A. I won't say that it does not. I will say I do not have it with me. I will have to go into it further.

Q. I think that is pretty important, and if you can secure that information that we may check it—

A. I cannot get it today."

Thereafter nothing further appears respecting Mr. Ruth's status as a mechanic in the Highway Department of Jefferson County.

If the transfer of Ruth to Jefferson County was not made Scott or Newburg should have been retained as a mechanic instead of Ruth. Inasmuch as the information requesting the transfer was not forthcoming it must be assumed that what was done was regular in procedure. The burden of establishing that Ruth was not properly classified in Jefferson County as a mechanic is upon the relators and as it was not forthcoming the fact must be resolved against them. In the furtherance of justice, if an examination of the record discloses that Ruth had not been transferred from Guernsey to Jefferson County, an application for rehearing could be made and that information offered by way of testimony in which event it would be necessary to order that either Scott or Newburn be reinstated as a mechanic instead of Ruth as of the date of their lay-off. In this connection it might be noted that though each of these three men had the classification of mechanic, Mr. Sharp says that at the time of the layoff Ruth was working as a mechanic, Newburn as a truck driver and Sharp as a greaser. There are other instances in the record wherein it appears that men of certain rating were doing work incident to other classifications.

At page 144 of the record the following appears:

"Q. It is true, isn't it, that a tractor operator should perform the same work as a maintainer operator?

A. I am not able to state that because I am not familiar enough with the maintainer.

Q. (By Mr. Rutledge): They are separate classifications and one man is not permitted to do the work of the other?

A. Yes."

It cannot be well urged that it was in the interests of economy to retain Ruth at 70c per hour and dismiss Scott and Newburn, who were earning but 57½c per hour. Then, too, it appears that certain of the truck drivers, some of whom no doubt were put on after the date of the lay-off of relators, were carried at the rate of 57½c per hour and it is probable that some of them were but provisional appointees.

### TRACTOR OPERATORS.

On March 25, 1935, there were four tractor operators. All of them were dropped. This action seems justified because of the undisputed testimony that on and after March 25, 1935, there were no tractors in service in the Highway Department in Jefferson County.

### SHOVEL OPERATORS.

There were three shovel operators so classified at the time of the lay-off, Ernest Blake at 80c per hour, Ralph Blackburn and Ernest Scott, relator, each at 70c per hour. Scott was dropped. It is testified that at the time of the lay-off there was but one shovel and one crane in the county. It follows that but two operators were required and it was not an abuse of discretion to release one. It is probable that all the men who were released could have been given employment on the highways in some other capacity than under their classified status but the obligation to so employ them was not binding upon respondents and is not a condition of which we can take cognizance in this sort of action.

These cases have given us much concern and in our conclusion that the relief sought by relators can not be granted we are in no sense indicating that we are satisfied that the action of the department in laying off relators and others was in good faith. We are required to say that proof of the averments of the respective petitions is not forthcoming and that bad faith is not shown.

The court should have been specifically informed of the respective duties of the positions involved in this case as defined

by the Highway Department and the Civil Service Commission. We have a somewhat well defined idea of the duties of a laborer in charge, inasmuch as it is said that he is a foreman, but in cases of this kind, where a question arises whether or not others are performing specific duties of the classification of relators, these duties should be defined. The brief of relators **Headnote 9.** expressly calls attention to the testimony of Mr. Sharp that throughout the period of time after March 25, 1935, from six to fifteen labor gangs were working in Jefferson County every day that the Highway Department functioned. The record does not support this broad statement and the exact number of gangs working in 1935 ·does not appear. It ·is obvious, however, if there were but seven laborers in charge on March 25, 1935, that if there were fifteen labor gangs working ·they did not have a foreman in charge of each gang. This line of testimony is too general to permit this court to say that because there were fifteen labor gangs working there should have been seven laborers in charge. If respondents, laborers in charge. expected to maintain their claim that others not so classified were doing their work they must have been prepared· to prove it definitely.

. It is highly probable that a proper administration of the work of the Highway Department in Jefferson County would have required that the laborers in charge who we're laid off be called to assist. on the occasions of the emergency work of the department. It seems doubtful that the department in 1936 could expend by emergency requirements in floods and snow and ice removal the sum of $18,130.37 and not need more than three laborers in charge. However, the itemization ·of the expenditures for floods and snow and ice is so general in its nature that we can not·say what is represented thereby. In the form of classified employment and to draw general conclusions that because so much money was expended the discharged laborers ·in charge should have been employed for any definite time is impossible.

Again, in the brief of relators it is said:

"It is significant to note that subsequent to March 25th, 1935, there began to appear on the Jefferson County payroll numerous names of men with different titles such as maintainer operator, etc., and we can not help but feel that it is justifiable inference that the positions formerly held by the three relators mentioned· was·sub-

sequently filled by other persons with different titles.

"It is also significant that there is not a single permanent appointment in the classified service in the maintenance division of the Highway Department as it is now constituted in Jefferson County although there is no reason to believe and no evidence to the contrary but that the same general type of work is being performed now and has continuously been performed throughout the period following March 25th, 1935."

There is some little support for the first proposition heretofore quoted but there is no showing that a maintainer operator did the same work as either the tractor operator or the shovel operator. Upon the second proposition quoted there is no substantial proof. As a matter of fact, the total number of employees appearing subsequent to the lay-off of relators was at all times for months thereafter less than before and in the interrogation of Mr. Fitzpatrick the names of truck drivers, which was by far the greater number of classified employees, appearing was only given as of March 25, 1935, and thereafter no mention whatever is made of the names or number of employees designated as truck drivers. We are unable to determine that the employees working at the time of the lay-off and subsequent thereto were largely provisional appointees, though that may be the fact.

The relief sought will be denied and the petition dismissed unless testimony respecting the failure of transfer of Ruth, mechanic, is forthcoming.

BARNES, PJ, and GEIGER, J, concur.

## ON APPLICATION FOR REHEARING

### Decided Oct 5, 1938

**By THE COURT**

On application as for rehearing it is suggested that evidence is ˙now and was available at the time of the hearing which establishes that James W. Ruth was certified as a mechanic to Guernsey County, and was never transferred from Guernsey to Jefferson County. This procedure is in conformity to our opinion and we will open up the cases for the taking of further testimony on the subject matter indicated. This factual matter may be offered by stipulation of counsel if it can be agreed or if it is desired to offer witnesses, testimony

may be taken before the Master who has heretofore acted in this case.

BARNES, PJ, HORNBECK and GEIGER, JJ, concur.